**Thomas Lether, OSB #101708**
**Eric J. Neal, OSB #110268**
Lether Law Group
1848 Westlake Ave N Ste. 100
Seattle, WA 98109
T: (206)467-5444
F: (206) 467-5544
tlether@letherlaw.com
eneal@letherlaw.com
*Attorneys for Plaintiff Artisan and*
*Truckers Casualty Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| ARTISAN AND TRUCKER CASUALTY COMPANY, a foreign insurer,<br><br>Plaintiff,<br><br>v.<br><br>FINISHLINE TRUCKING, LLC, an Oregon limited liability company; and PHILLIP BENNETT, an individual person;<br><br>Defendants. | Case No. 20-1762<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

**I.     INTRODUCTION**

1.     This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.  Artisan and Truckers Casualty Company (hereinafter "Artisan") seeks a determination that it has no duty to defend or indemnify Finishline Trucking, LLC (hereinafter "Finishline") under a policy of insurance issued to Finishline by Artisan with respect to claims brought against Finishline in the action described in detail below.

## II.  PARTIES

2. Plaintiff Artisan is a foreign insurance company organized under the laws of the State of Ohio with its principal place of business located in the State of Ohio.

3. Defendant Finishline is an Oregon limited liability company with its principal place of business located in Hood River County, Oregon. Upon information and belief, all members of Finishline are citizens of the State of Oregon.

4. Defendant Phillip Bennett ("Bennett") is a resident of Clark County, Washington and is a citizen of the State of Washington.

## III.  JURISDICTION AND VENUE

5. This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity amongst the parties is complete.

6. Venue is proper with this Court pursuant to 28 U.S.C. §1391 as this case involves claims for insurance coverage stemming from alleged losses which occurred in Hood River, Oregon.

## IV.  FACTS

**A.  Facts of the Loss**

7. On or about June 24, 2019, Bennett orally contracted with Finishline for delivery of a disassembled indoor horse-riding arena (hereinafter the "Arena"), from its location in Bend, Oregon to be delivered to Burley, Washington at an agreed upon rate for the length and time of the delivery trip.

8. On or about July 11, 2019, Finishline picked up the Arena in Bend, Oregon and transported it to Finishline's business location in Hood River, Oregon. Bennett expected delivery of the Arena on or before July 18, 2019.

9. Finishline did not deliver the Arena on or before July 18, 2019.

10. On or about July 27, 2019, Finishline e-mailed an electronic invoice to Bennett demanding payment prior to the delivery.

11. Thereafter, Finishline began charging Bennett a daily storage fee.

**B.    The Underlying Lawsuit**

12. On April 21, 2020, the lawsuit, entitled *Phillip Bennett v. Finishline Trucking, LLC* was brought by Finishline in Hood River County, Case No. 19CV47870 (hereinafter the "Underlying Lawsuit").

13. Bennett alleges that Finishline continues to refuse to deliver the Arena and is wrongfully in possession of the Arena.

14. Bennett alleges that the Arena is valued at $750,000.

15. Bennett alleges that Finishline's wrongful possession has caused Bennett to incur actual costs and expenses in loss of the property and in construction delays.

16. Bennett alleges that Finishline continues to store the Arena and the storage has damaged the Arena beyond repair.

17. A claim has been tendered on behalf of Finishline to Artisan seeking defense and indemnity coverage arising out of the allegations asserted by Bennett in the Underlying Lawsuit.

18. Artisan is defending Finishline in the Underlying Lawsuit subject to an express reservation of rights.

**C.    The Artisan Policy**

19. Artisan issued a Commercial Auto Insurance Policy no. 00364363-0 to Finishline with a policy period of January 28, 2019 to January 28, 2020, (hereinafter "the Artisan Policy").

20. The Artisan Policy lists Finishline as the named insured.

21. The insuring agreement for liability coverage in Artisan Policy's Commercial Auto Coverage (hereinafter "Commercial Auto Coverage") contains the following language, in pertinent parts:

### PART I - LIABILITY TO OTHERS

**Insuring Agreement- Liability To Others**

Subject to the Limits of Liability, if **you** pay the premium for liability coverage, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an insured become legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property** damage to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

. . .

Form 4884 OR (05/11)

### GENERAL DEFINITIONS

**The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.**

1. "**Accident**" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes bodily injury or property damage.

. . .

17. "**You**", "**your**" and "**yours**" refer to the named insured on the declarations page

Form 6919 (06/10) at 2-3, 5.

COMPLAINT FOR DECLARATORY RELIEF - 4

"**Property damage**" means physical damage to, or destruction of, or loss of use of tangible property.

Form 4881 OR (05/11).

22. The following exclusions are found in the Commercial Auto Coverage and apply to the above insuring agreement:

Coverage under this Part I, including our duty to defend, does not apply to:

1. **Expected or Intended Injury**

   **Bodily injury** or **property damage** either expected by or caused intentionally by or at the direction of any **insured**.

   …

7. **Care, Custody or Control**

   **Property damage** to, or **covered pollution cost or expense** involving any property owned by, rented to, being transported by, used by, or in the care custody or control of the **insured**, including any motor vehicle operated or being towed. But this exclusion does not apply to liability assumed under a sidetrack agreement.

8. **Movement of Property by Mechanical Device**

   **Bodily injury** or **property damage** resulting from or caused by the movement of property by a mechanical device, other than a hand truck, not attached to an **insured auto**.

9. **Handling of Property**

   **Bodily injury** or **property damage** resulting from or caused by the handling of property:

   a. before it is moved from the place where it is accepted by the **insured** for movement into or onto **your insured auto**; or

   b. after it has been moved from **your insured auto** to the place where it is finally delivered by the **insured**.

…

Form 6919 (06/10) at 9, 10.

23. The Artisan Policy contains the following provision regarding Finishline's duty in an event of accident or loss:

> **DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS**
>
> . . .
>
> A person seeking coverage must:
>
> 1. cooperate with **us** in any matter concerning a claim or lawsuit;
>
> 2. provide any written proof of loss **we** may reasonably require;
>
> …
>
> 4. promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit;
>
> …

Form 6912 (06/10) at 1.

24. The Artisan Policy contains the following MCS-90 endorsement (hereinafter "MCS-90"):

> The insurance policy to which this endorsement is attached provides liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).
>
> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured or public liability resulting from

> negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement
>
> It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.
>
> The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

Form MSC-90 at 2.

25. The Artisan Policy contains a Motor Truck Cargo Legal Liability Coverage ("Motor Truck Cargo") endorsement.

26. The insuring agreement in the Motor Truck Cargo endorsement contains the following language, in pertinent parts:

Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**INSURING AGREEMENT - LOSS TO COVERED PROPERTY**

Subject to the Limit of Liability, if **you** pay the premium for this Motor Truck Cargo Legal Liability Coverage, **we** will pay for the direct physical **loss** to **covered property** that **you** are legally liable to pay as a **trucker** under a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage. For this coverage to apply, the **covered property** must, at the time of the **loss**, be in **your** exclusive physical custody and control:

1. while **in due course of transit** in, on, or attached to an **insured auto**; or

2. during **loading or unloading**

Coverage applies to **loss** to **covered property** only if the **loss** is caused by a **covered peril**. For **covered property** that is **your** property, **our** payment is not contingent upon **your** liability.

. . .

**ADDITIONAL DEFINITIONS**

The following additional definitions apply throughout the Motor Truck Cargo Legal Liability Coverage endorsement whenever the defined terms appears in boldface type, whether in the singular, plural, or possessive.

. . .

2. "**Covered peril**" means any external risks of direct physical **loss** to **covered property** or **business equipment**, except for those listed in a. through l. below as Excluded Perils.

   **Excluded Perils: Please read the following list of excluded perils carefully. Coverage will not be afforded under this Motor Truck Cargo Legal Liability Coverage endorsement for these types of perils. We** will not pay for **losses** to **covered property** … caused by, resulting in or

        from, or arising out of these excluded perils regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.

        . . .

    f.    **Consequential Loss**

        Loss of use, loss of market value, or delay; or any other remote or consequential loss, other than direct physical **loss** to **covered property** or **business equipment**.

        . . .

    h.    **Voluntary Parting, Nondelivery, Mysterious Disappearance**

        . . .

        (ii) Nondelivery or misdelivery; or

    . . .

3.    "**Covered property**" means lawful goods and merchandise of others, except for the items listed in a. though j. below as Excluded Properties. **Covered property** includes **goods and merchandise** owned by **you** while loaded for shipment in or an **insured auto**, whether or not shipped under a bill of lading or shipping receipt . . .

    <u>**Excluded Properties**</u>**: Please read the following list of excluded properties carefully. Coverage will not be afforded under this Motor Truck Cargo Legal Liability Coverage endorsement for loss to these types of properties.**

    . . .

    e.    **Property Not Under a Bill of Lading**

        Any property for which no bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage has been issued, or which is carried gratuitously or without charge.

. . .

5.     ''**In due course of transit**'' means being shipped from the time you assume care, custody, or control of the **covered property** for the purpose of the actual movement of **covered property** from the point of shipment bound for a specific destination and ending when one of the following first occurs:

    a.     the **covered property** is accepted by, or on behalf of, the consignee at the intended destination;

    b.     the **covered property** is accepted by, or on behalf of, the consignee at any intermediate point short of reaching the original intended destination;

    c.     72 hours after arrival at destination; or

    d.     any other stop that exceeds 72 hours.

**In due course of transit** includes ordinary, reasonable, and necessary stops, interruptions, delays, or transfers incidental to the route and method of shipment.

. . .

7.     ''**Loading or unloading**'' means the direct physical process of hoisting, lifting, or moving covered property:

    a.     onto an **insured auto** from the ground or loading docks adjacent to such insured auto; or

    b.     off of an **insured auto** to the place where it is finally delivered.

However, for auto haulers, **loading or unloading** means moving **covered property** onto or off of **your insured auto**, including moving a motor vehicle under its own power solely for the purpose of **loading or unloading** it from the **insured auto**, but no more than one road mile from the **insured auto**.

. . .

11.     "**Trucker**" means any person, organization, or motor carrier engaged in ethe business of transporting property for hire.

Form No. Z434 (08/11).

COMPLAINT FOR DECLARATORY RELIEF - 10

27. The Artisan Policy contains a Commercial General Liability Endorsement (hereinafter the "GL Endorsement").

28. The insuring agreement for liability coverage in the GL Endorsement contains the following language, in pertinent parts:

> We agree with you that the following coverage is added to your Commercial Auto Policy:
>
> **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **Insuring Agreement**
>
> 1. **We** will pay those sums, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, that the **insured** becomes legally obligated to pay as damages because of **bodily injury or property damage** to which this insurance applies. **We** will have the right and duty to defend the **insured** against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. We must, at our discretion, investigate any **occurrence** and settle any claim or **suit** that may result.
>
>    . . .
>
> 2. This insurance applies to **bodily injury** and **property damage** only if:
>
>    a. The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**; and
>
>    b. The **bodily injury** or **property damage** occurs during the policy period.
>
> The following definitions apply to the above-referenced provision:
>
> <u>**ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT**</u>
>
> The following definitions are in addition to those found in the Commercial Auto Policy. Except as otherwise defined in this

endorsement, terms appearing in boldface type, whether in the singular, plural or possessive, will have the following meanings:

. . .

10. "**Occurrence**" means an **accident**, happening or event, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

13. "**Property damage**", for the purposes of this endorsement only, means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

Form No. Z433 (04/08).

29. The GL Endorsement contains the following Exclusions:

    1. **Expected or Intended Injury**

       **Bodily injury** or **property damage** expected or intended from the standpoint of any insured.

    . . .

    6. **Aircraft, Auto or Watercraft**

       Bodily injury or property damage arising out of:

       a. The ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by, or rented, leased, or loaned to, any insured; or

                . . .

>> Use includes operation and **loading or unloading**.
>
> . . .
>
> 8. **Damage to Property**
>
> **Property damage** to:
>
> . . .
>
> d. Personal property in the care, custody, and control of the insured;
>
> . . .

Policy Form No. Z433 (04/08) at 8, 9, 10.

## V. THERE IS AN ACTUAL AND JUSTICIABLE CONTROVERSY AS TO ARTISAN'S COVERAGE OBLIGATIONS

30. Artisan incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

31. The Commercial Auto Coverage provides liability coverage for damages, other than punitive or exemplary damages, for "property damage" for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance, or use of an "insured auto."

32. There is an actual and justiciable controversy as whether any of the of the claims asserted in the underlying lawsuits are for damages arising out of the "ownership, maintenance, or use of [an] insured auto."

33. There is an actual and justiciable controversy as to whether the conversion and/or possession of the Arena by Finishline qualifies as "property damage."

34. The Commercial Auto Coverage excludes coverage for "property damage" expected by or intentionally caused by or at the direction of the "insured."

35. There is an actual and justiciable controversy as to whether Artisan owes coverage for any "property damage" to the Arena that was expected or intentionally caused at the direction of Finishline.

36. The Commercial Auto Coverage excludes coverage for "property damage" involving any property "owned by, rented to, being transported by, used by, or in the care custody or control of the insured, including any motor vehicle operated or being towed."

37. There is an actual and justiciable controversy as to whether Artisan owes coverage for any "property damage" to the Arena transported by Finishline or in the care, custody, and control of Finishline.

38. The Commercial Auto Coverage excludes coverage for "property damage" resulting from or caused by the movement of property by a mechanical device not attached to an "insured auto."

39. There is an actual and justiciable controversy as to whether Artisan owes coverage to Finishline for "property damage" caused by the movement of the Arena by a mechanical device.

40. The Commercial Auto Coverage excludes coverage for "property damage" resulting from or caused by the handling of the property before it is moved from the place where it was accepted by the "insured" for movement into or onto the "insured's auto."

41. There is an actual and justiciable controversy as to whether Artisan owes coverage to Finishline for "property damage" caused by handling of the Arena before it is moved from the place where it was accepted by Finishline for movement into or onto Finishline's insured auto.

42. The Commercial Auto Coverage excludes coverage for "property damage" resulting from or caused by the handling of the property after is has been moved from the insured's auto to the place where it is finally delivered by the "insured."

43. There is an actual and justiciable controversy as to whether Artisan owes coverage to Finishline for "property damage" caused by handling of the Arena after it has been moved from Finishline's insured auto to the place where the Arena was finally delivered.

44. The Commercial Auto Coverage provides that for coverage to apply under the policy, the insured seeking coverage must promptly report each "accident" or "loss" and must:

> 1. cooperate with **us** in any matter concerning a claim or lawsuit;
>
> 2. provide any written proof of loss **we** may reasonably require;
>
> …
>
> 4. promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit;

45. There is an actual and justiciable controversy as to whether Finishline fulfilled the duties required of Finishline under the Artisan Policy.

46. The MCS-90 endorsement provides liability coverage for any final judgment recovered against the insured or public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980.

47. There is an actual and justiciable controversy as to whether Artisan owes coverage to Finishline for any final judgment that may be recovered against Finishline or for public liability resulting from Finishline's negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980.

48. The MCS-90 endorsement does not provide coverage to property transported by the insured and designated as cargo.

49. There is an actual and justiciable controversy as to whether the Arena transported by Finishline was designated as cargo.

50. The Motor Truck Cargo endorsement provides coverage for direct physical "loss" to "covered property" that an insured is legally liable to pay as a "trucker" under a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage. The "covered property" must be in the insured's exclusive physical custody and control while "in due court of transit" in, on, or attached to an "insured auto" or during "loading" and "unloading." Coverage applies to "loss" to "covered property" only if the "loss" is caused by a "covered peril."

51. There is an actual and justiciable controversy as whether the Arena is "covered property" under a written bill of lading, tariff document, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage.

52. There is an actual and justiciable controversy as to whether the Arena was in the exclusive physical custody and control while "in due court of transit" in, on, or attached to an "insured auto" or during "loading" and "unloading."

53. There is an actual and justiciable controversy as to whether the Arena is "covered property."

54. There is an actual and justiciable controversy as to whether Artisan owes Finishline coverage for "loss" to a "covered property."

55. There is actual and justiciable controversy as to whether Artisan owes Finishline coverage for "loss" to the Arena caused by a "covered peril."

56.     The Motor Truck Cargo endorsement does not provide coverage for "losses" to "covered property" caused by, resulting in or from, or arising out of loss of use, loss of market value, or delay, or any other remote or consequential loss.

57.     There is an actual and justiciable controversy as whether Artisan owes Finishline coverage for losses to the Arena caused by, resulting in or from, or arising out of loss of use, loss of market value, or delay, or any other remote or consequential loss.

58.     The Motor Truck Cargo endorsement does not provide coverage for "losses" to "covered property" caused by, resulting in or from, or arising out of nondelivery or misdelivery.

59.     There is an actual and justiciable controversy as whether Artisan owes Finishline coverage for losses to the Arena caused by, resulting in or from, or arising out of nondelivery or misdelivery of the Arena.

60.     The Motor Truck Cargo endorsement does not provide coverage to any property for which no bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage has been issued, or which is carried gratuitously or without charge.

61.     There is an actual and justiciable controversy as whether the Arena is property for which no bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage has been issued, or which is carried gratuitously or without charge.

62.     The GL Endorsement provides liability coverage for damage, other than punitive or exemplary damages, for which an "insured" becomes obligated to pay because of "property damages" caused by an "occurrence" that takes place in the "coverage territory."

63.     There is a justiciable controversy as to whether Artisan owes coverage to Finishline for "property damages" caused by an "occurrence" that takes place in the "coverage territory."

64. The GL Endorsement excludes coverage for "property damage" expected or intended from the standpoint of the "insured."

65. There is an actual and justiciable controversy as to whether Artisan owes coverage for any "property damage" to the Arena that was expected or intended from the standpoint of Finishline.

66. The GL Endorsement excludes coverage for "property damage" arising out of the ownership, maintenance, or use of any "auto" owned or operated by the "insured".

67. There is an actual and justiciable controversy as to whether Artisan owes coverage for any "property damage" arising out of the ownership, maintenance, or use of any "auto" owned or operated by Finishline,

68. The GL Endorsement excludes coverage for "property damage" arising from operation and "loading" and "unloading."

69. There is an actual and justiciable controversy as to whether Artisan owes coverage for any "property damage" arising from Finishline's operation and "loading" and "unloading" of the Arena.

70. The GL Endorsement excludes coverage for "property damage" to personal property in the care, custody, and control of the "insured".

71. There is an actual and justiciable controversy as to whether Artisan owes coverage for any "property damage" to personal property in the care, custody, and control of Finishline.

72. There is an actual and justiciable controversy as to whether the Arena would be considered personal property.

73. There is an actual and justiciable controversy as to whether there is coverage available to Finishline under the Artisan Policy.

74.     In addition to the provisions cited above, Artisan pleads all other conditions, terms, provisions, limitations, definitions, and exclusions of the Artisan Policy, which also may be found to be applicable to Artisan's investigation and defense of these claims, and Artisan reserves the right to amend its Complaint for Declaratory Judgment as additional and/or more specific information becomes available.

## VI.     CLAIM FOR DECLARATORY JUDGMENT

75.     Artisan incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein

76.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Artisan seeks a judicial declaration of its rights and duties under the Artisan Policy.

77.     Plaintiff Artisan is entitled to Declaratory Judgment in its favor, specifically including a judicial determination that it does not owe any defense or indemnity coverage obligations to Finishline under the policy of insurance issued to Finishline for the claims asserted in the underlying lawsuit, the Underlying Lawsuit, that is the subject of this lawsuit.

## VII.     REQUEST FOR RELIEF

WHEREFORE, Artisan, having specifically alleged the foregoing, now requests for the following relief:

78.     For a determination of the rights and obligations of the parties hereto under the Artisan Policy.

79.     For a declaration that Artisan does not owe any coverage or indemnity obligations to Finishline under the Artisan Policy for the subject loss.

80.     For all interest as allowed by applicable law.

81.     For attorney's fees and costs allowed by applicable statute and law.

82.     For other and further relief as the Court deems just and equitable.

DATED this 13th day of October, 2020.

**LETHER LAW GROUP**

*/s/ Thomas Lether*
Thomas Lether, OSB #101708
*/s/ Eric J. Neal*
Eric J. Neal, OSB # 110268
1848 Westlake Avenue N, Suite 100
Seattle, WA 98109
P: (206) 467-5444/F: (206) 467-5544
eneal@letherlaw.com
tlether@letherlaw.com
*Attorneys for Plaintiff Artisan and Truckers Casualty Company*