**Thomas Lether, OSB #101708**
**Eric J. Neal, OSB #110268**
Lether Law Group
1848 Westlake Ave N Ste. 100
Seattle, WA 98109
T: (206)467-5444
F: (206) 467-5544
tlether@letherlaw.com
eneal@letherlaw.com
*Attorneys for Plaintiff Artisan and*
*Truckers Casualty Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| ARTISAN AND TRUCKERS CASUALTY COMPANY, a foreign insurer,<br><br>Plaintiff,<br><br>v.<br><br>FINISHLINE TRUCKING, LLC, an Oregon limited liability company; and PHILLIP BENNETT, an individual person;<br><br>Defendants. | Case No. 3:20-cv-01762-YY<br><br>**MOTION FOR ENTRY OF DEFAULT JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT** |

Artisan and Truckers Casualty Company ("Artisan") submits the following Motion for Entry of Default Judgment, or in the alternative, Motion for Summary Judgment.

## I.    CERTIFICATION & RELIEF REQUESTED

For the purposes of Local Rule CR 7(d)(1) and Fed. R. Civ. P. 5(a)(2), Artisan hereby certifies that Defendant Finishline Trucking, LLC ("Finishline") has failed to appear and is in Default and that Artisan. Dkt. at 18-19.   Artisan conferred with defendant Phillip Bennett ("Bennett") on June 2, 2021 during this Court's telephonic Rule 16 conference where the parties were not able to resolve their dispute despite good faith efforts to do so and where a scheduling order with respect to dispositive motions was agreed upon.  *See* Dkt. 25.

Artisan respectfully asks that the Court enter Default Judgment against Finishline pursuant to Fed. R. Civ. P. 55(b)(2), 28 U.S.C. § 2201(a), and the facts and legal authority discussed below. Specifically, Artisan asks that the Court enter a Default Judgment granting Declaratory Judgment in favor of Artisan, stating the following:

> With regard to the allegations contained within the lawsuit filed by Phillip Bennett entitled, *Phillip Bennett v. Finishline Trucking, LLC*, Hood River Circuit Court Cause, No. 19CV47870 ("Underlying Suit") that forms the basis of the instant action, Defendant Finishline Trucking, LLC is not entitled to any insurance coverage pursuant to the terms and conditions of the policy of insurance issued to it by Artisan and Truckers Casualty Company (policy no. 00364363-0). Because there is no coverage available to Finishline under the Artisan Policy for the claims asserted against it in the Underlying Suit, Artisan is entitled to withdraw from the defense of Artisan in the Underlying Suit.

A proposed Default Judgment is filed herewith.

In the alternative, should the Court find that an entry of Default Judgment is not appropriate, Artisan asks that the Court grant Summary Judgment in favor of Artisan pursuant to Fed. R. Civ. P. 56, ruling that Finishline is not entitled to insurance coverage for the claims brought against it by Bennett in *Phillip Bennett v. Finishline Trucking, LLC*, Hood River Circuit Court Cause, No. 19CV47870 (the "Underlying Suit").

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 1

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

## II.    INTRODUCTION

This is an insurance coverage dispute regarding Artisan's rights and obligations under a policy of insurance issued to Finishline regarding the claims against Finishline in the Underlying Suit.

In the Underlying Suit, Bennett alleges that Finishline agreed to deliver a disassembled indoor horse-riding arena. Bennett further alleges that Finishline failed to deliver the arena and continues to wrongfully possess the arena. Bennett has claimed that Finishline's wrongful possession caused him to incur actual costs and expenses for the loss of the property and resulted in construction delays. Bennett has claimed that Finishline continues to store the arena and the method of storage has damaged the arena beyond repair.

Finishline tendered the Underlying Suit to Artisan for defense and indemnity and Artisan accepted the duty to defend pursuant to a reservation of rights. Artisan filed the instant matter seeking a declaration that it does not owe any duties to Finishline pursuant to the terms, conditions, and exclusions of the Artisan policy. Specifically, Artisan has asserted that the policy does not provide coverage for intentional conduct of the type alleged in the Underlying Suit. It also does not provide coverage for losses that do not arise out of the use of a motor vehicle. Finishline has failed to appear or defend in the instant matter. As such, a default was entered against it. Therefore, Artisan is entitled to a Default Judgment. In the alternative, Artisan is entitled to summary judgment in its favor because the claims in the Underlying Suit are clearly and unambiguously excluded by the terms, conditions, and exclusions of the policy.

## III.    STATEMENT OF FACTS

### A.  The Underlying Suit and Tender

On or about November 1, 2019, Bennett filed the Underlying Suit against Finishline. On April 21, 202, Bennett filed an Amended Complaint for Breach of Contract, Conversion, Unjust Enrichment, and Negligence ("Amended Complaint"). Ex. 1 to Declaration of Melissa Ann Boffenmyer, AIC ("Boffenmyer Decl."). According to the Amended Complaint, Bennett and

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 2

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

Finishline entered into an oral contract, on or about June 24, 2019, for delivery of a disassembled indoor horse-riding arena, from its location in Bend Oregon to be delivered to Burley, Washington, at the rate of $170/hour, per driver. Ex. 1 at 1:24-2:3.  The 12-hour roundtrip, for two drivers, would total $4,080.00.  Ex. 1 at 2:3-4. The parties agreed that the contract was payable on delivery in Burley. Ex. 1 at 2:7-9.

Bennett alleges that Finishline needed to use its trucks for another job after pickup, but before delivery of the arena. Ex. 1 at 2: 11-12.  Per the Amended Complaint, Bennett agreed that Finishline would initially take the arena to its business location in Hood River, Oregon, use its trucks for the other job, and then deliver the arena to Burley within one week. Ex. 1 at 2: 12-14.

Bennett alleges that Finishline picked up the arena on or about July 11, 2019. Ex. 1 at 2: 16. Finishline then purportedly transported the arena to its Hood River facility. Ex. 1 at 2: 16-17. Bennett claims that, as a result, he expected delivery of the arena on or before July 18, 2019. Ex. 1 at 2: 18-19. On July 15, 2019, Bennett resent his delivery address, and reiterated he was prepared to pay cash on the day of delivery, per the terms of the oral contract. Ex. 1 at 2: 23-25. According to Bennett, Finishline did not attempt to make delivery at that time. Ex. 1 at 3. Instead, Finishline offered excuses to delay the delivery. Ex. 1 at 3: 2-3. Bennett claims that Finishline advised him that delivery would likely occur on Monday, July 22, 2019. Ex. 1 at 3: 3-4. The Amended Complaint alleges that delivery did not occur on that day. Ex. 1 at 3: 5.  Instead, the Amended Complaint alleges that Finishline advised July 23, 2019, that its driver suffered a minor injury and sent a picture of a small cut above the driver's eye.  Ex. 1 at 3: 5-9.  Finishline did not make delivery that day and was purportedly nonresponsive the rest of the week.  Ex. 1 at 3:7-9.

According to Bennett, Finishline's excuses and failure to deliver continued. Ex. 1 at 3: 5-9. As a result, Bennett allegedly contacted the Hood River County Sheriff's Office to request a welfare check on the arena. Ex. 1 at 3: 11-13. Bennett claims that Finishline finally responded on July 27, 2019, by emailing him an electronic invoice. Ex. 1 at 3: 15-17. The invoice was allegedly backdated to July 12, 2019 and totaled $15,900. Ex. 1 at 3: 17-18. Bennett has alleged that

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 3

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

Finishline demanded payment prior to delivery in violation of the parties' oral contract. Ex. 1 at 3: 18-19. Bennett further claims that Finishline then began charging a daily storage fee and demanding additional funds. Ex. 1 at 3: 19-21.

Per the allegations of the Amended Complaint, Bennett alleges that Finishline continues to refuse to deliver the arena, has broken the terms of their agreement, and is in wrongful possession of Bennett's property, which is valued at $750,000. Ex. 1 at 3: 25-26. Bennett claims that he has incurred actual costs and expenses in loss of property and in resultant construction delays. Ex. 1 at 3-4: 26, 1. Specifically, he has asserted that the failure to deliver prevented him from constructing the arena before Washington's rainy season and caused him to spend tens of thousands of dollars in preparation for the construction of the arena. Ex. 1 at 4: 2-4. Furthermore, Bennett claims that Finishline's method of storing the arena caused damage beyond repair and that at least some of the storage techniques were specifically against the express objections of Bennett. Ex. 1 at 4:15-16; 6:22-7:9. This included, but was not limited to, removing the steel trusses and other parts of the arena from the flatbed trailer without a proper crane and spreader bar. Ex. 1 at 6:22-23. Bennett has asserted claims for breach of contract, wrongful conversion, unjust enrichment, and negligence. Ex. 1 at 4-7.

Finishline tendered the claim and Underlying Suit to Artisan and Artisan accepted the tender for defense of the Underlying Suit pursuant to a full reservation of rights. Boffenmyer Decl., at ¶¶3-4.

**B.  The Artisan Insurance Policy**

Artisan issued a Commercial Auto Insurance Policy no. 00364363-0 (the "Policy") to Finishline as the named insured with a policy period of January 28, 2019 to January 28, 2020. Ex. 2 to Boffenmyer Decl. The Insuring Agreement for the liability coverage part provides, in pertinent part, as follows:

a.      **PART I - LIABILITY TO OTHERS**
**Insuring Agreement- Liability To Others**

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 4

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

Subject to the Limits of Liability, if **you** pay the premium for liability coverage, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an insured become legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property** damage to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

. . .

Ex. 2, at pg. 52-53 (Form 4881 OR (05/11)).

The Policy defines "property damage" as follows:

"**Property damage**" means physical damage to, or destruction of, or loss of use of tangible property.

Ex 2 at pg. 53(Form 4881 OR (05/11)).

The Commercial Auto Coverage includes the following exclusions for property damage to property in the care, custody, and control of an insured and for property damage resulting from an insured's handling of property:

**EXCLUSIONS – PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY.  IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I – LIABILITY TO OTHERS.**

Coverage under this Part I, including **our** duty to defend, does not apply to:

…
1.     **Expected or Intended Injury**
       **Bodily injury** or **property damage** either expected by or caused intentionally by or at the direction of any **insured**.
…

7.     **Care, Custody or Control**

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 5

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

**Property damage** to, or **covered pollution cost or expense** involving any property owned by, rented to, being transported by, used by, or in the care custody or control of the **insured**, including any motor vehicle operated or being towed. But this exclusion does not apply to liability assumed under a sidetrack agreement.

…

9.    **Handling of Property**

**Bodily injury** or **property damage** resulting from or caused by the handling of property:

a.    before it is moved from the place where it is accepted by the **insured** for movement into or onto **your insured auto**; or

b.    after it has been moved from **your insured auto** to the place where it is finally delivered by the **insured**.

Ex. 2 at pg. 9-10 (Form 6912 (06/10)).

In addition, the Policy includes a Motor Truck Cargo Liability Coverage Endorsement, which provides in pertinent part as follows:

**MOTOR TRUCK CARGO LEGAL LIABILITY
COVERAGE ENDORSEMENT**

Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**INSURING AGREEMENT - LOSS TO COVERED PROPERTY**

Subject to the Limit of Liability, if **you** pay the premium for this Motor Truck Cargo Legal Liability Coverage, **we** will pay for the direct physical **loss** to **covered property** that **you** are legally liable to pay as a **trucker** under a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage. For this coverage to apply, the **covered property** must, at the time of the **loss**, be in **your** exclusive physical custody and control:

1.    while **in due course of transit** in, on, or attached to an **insured auto**; or

2.    during **loading or unloading**

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 6

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

Coverage applies to **loss** to **covered property** only if the **loss** is caused by a **covered peril**. For **covered property** that is **your** property, **our** payment is not contingent upon **your** liability.

. . .

## ADDITIONAL DEFINITIONS

The following additional definitions apply throughout the Motor Truck Cargo Legal Liability Coverage endorsement whenever the defined terms appear in boldface type, whether in the singular, plural, or possessive.

. . .

2.    "**Covered peril**" means any external risks of direct physical **loss** to **covered property** or **business equipment**, except for those listed in a. through l. below as Excluded Perils.

**Excluded Perils: Please read the following list of excluded perils carefully. Coverage will not be afforded under this Motor Truck Cargo Legal Liability Coverage endorsement for these types of perils. We** will not pay for **losses** to **covered property** or **business equipment** caused by, resulting in or from, or arising out of these excluded perils regardless of any other cause or event that contributes concurrently or in        any   sequence to the **loss**.

. . .

f.    **Consequential Loss**

Loss of use, loss of market value, or delay; or any other remote or consequential loss, other than direct physical **loss** to **covered property** or **business equipment**.

. . .

h.    **Voluntary    Parting,    Nondelivery,    Mysterious Disappearance**

. . .

(ii) Nondelivery or misdelivery; or

. . .

3.    "**Covered property**" means lawful goods and merchandise of others, except for the items listed in a. though j. below as Excluded Properties. **Covered property** includes **goods and merchandise** owned by **you** while loaded for shipment in or an **insured auto**, whether or not shipped under a bill of lading or shipping receipt . . .

**Excluded Properties: Please read the following list of excluded properties carefully. Coverage will not be**

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

**afforded under this Motor Truck Cargo Legal Liability Coverage endorsement for loss to these types of properties.**

. . .

       e.    **Property Not Under a Bill of Lading**

          Any property for which no bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage has been issued, or which is carried gratuitously or without charge.

. . .

5.    ''**In due course of transit**'' means being shipped from the time you assume care, custody, or control of the **covered property** for the purpose of the actual movement of **covered property** from the point of shipment bound for a specific destination and ending when one of the following first occurs:

       a.    the **covered property** is accepted by, or on behalf of, the consignee at the intended destination;

       b.    the **covered property** is accepted by, or on behalf of, the consignee at any intermediate point short of reaching the original intended destination;

       c.    72 hours after arrival at destination; or

       d.    any other stop that exceeds 72 hours.

       **In due course of transit** includes ordinary, reasonable, and necessary stops, interruptions, delays, or transfers incidental to the route and method of shipment.

. . .

7.    ''**Loading or unloading**'' means the direct physical process of hoisting, lifting, or moving covered property:

       a.    onto an **insured auto** from the ground or loading docks adjacent to such insured auto; or

       b.    off of an **insured auto** to the place where it is finally delivered.

       However, for auto haulers, **loading or unloading** means moving **covered property** onto or off of **your insured auto**, including moving a motor vehicle under its own power solely for the purpose of **loading or unloading** it from the **insured auto**, but no more than one road mile from the **insured auto**.

. . .

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 8

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

11.   "**Trucker**" means any person, organization, or motor carrier engaged in the business of transporting property for hire.

Ex 2. At 81-91 (Form No. Z434 (08/11)).

The Policy also contains a Commercial General Liability Endorsement (hereinafter the "CGL Endorsement"), which provides in pertinent part as follows:

We agree with you that the following coverage is added to your Commercial Auto Policy:

**a.  COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**Insuring Agreement**

1.   **We** will pay those sums, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, that the **insured** becomes legally obligated to pay as damages because of **bodily injury or property damage** to which this insurance    applies. **We** will have the right and duty to defend the **insured** against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. We must, at our discretion, investigate any **occurrenc**e and settle any claim or **suit** that may result.

. . .

2.   This insurance applies to **bodily injury** and **property damage** only if:

    a.   The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**; and

    b.   The **bodily injury** or **property damage** occurs during the policy period.

Ex. 2 at 109-110 (Form No. Z433 (04/08)).

The following definitions apply to the above-referenced provision:

**b.  <u>ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT</u>**

The following definitions are in addition to those found in the Commercial Auto Policy. Except as otherwise defined in this endorsement, terms appearing in boldface type, whether in the singular, plural or possessive, will have the following meanings:

. . .

10.    "**Occurrence**" means an **accident**, happening or event, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

13.    "**Property damage**", for the purposes of this endorsement only, means:

a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

Ex 2. At 104-108 (Form No. Z433 (04/08)).

The following Exclusions apply to the above endorsement language:

Coverage under Coverage A does not apply to:

1.    **Expected or Intended Injury**

**Bodily injury** or **property damage** expected or intended from the standpoint of any insured.

2.    **Contractual Liability**

**Bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

a.    That the **insured** would have in the absence of the contract or agreement; …

. . .

Use includes operation and **loading or unloading.**

8.    **Damage to Property**

**Property damage** to:

. . .

d.    Personal property in the care, custody, and control of the insured;

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 10

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

. . .

Ex. 2 at 111-113 (Form No. Z433 (04/08)).

## C.    Procedural Status

After receiving notice of the claim Underlying Lawsuit, Artisan opened a claim and started a coverage investigation.  *See,* Boffenmyer Decl. at ¶¶2-3.  Artisan accepted defense of the claim under an express reservation of rights.  Boffenmyer Decl. at ¶3.

On October 3, 2020, Artisan filed the current action. Bennett waived service pursuant to Fed. R. Civ. P. 4. Dkt. 9.  Finishline was served by mail pursuant to the Court's Order.  Dkt. 12. An order for Default was entered against Finishline on February 17, 2021.  Dkt. 18, 19.

## IV.    ARGUMENT AND AUTHORITY

### A.  Default Judgment Should be Entered in Favor of Artisan

For the purposes of Fed. R. Civ. P. 5(a)(2), Artisan certifies that Finishline has failed to appear and is in Default.  Dkt. 18.  Pursuant to Fed. R. Civ. P. 55(b)(2) and 28 U.S.C. § 2201(a), Plaintiff requests a declaration that it has no duty to defend or indemnify Finishline under a policy of insurance issued to Finishline by Artisan with respect to claims brought against Finishline as described above. 28 U.S.C. § 2201(a) reads in pertinent part as follows:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Here, Artisan commenced this Declaratory Judgment Action to have this Court determine whether there is coverage available to Finishline with respect to the claims in the Underlying Suit, while still providing Finishline with a defense pursuant to a reservation of rights.  Therefore, the issues presented in this motion are properly before the Court and the Court should rule that there

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 11

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

is no coverage available to Finishline under the Artisan Policy. A proposed Order of Default Judgment Against Defendants accompanies this motion.

### B.  In the Alternative, Summary Judgment Should be Granted

To the extent this Court finds that Default Judgment is not appropriate at this time, the Court should nevertheless grant the relief requested by Artisan on summary judgment.

### 1.      Applicable law and Summary Judgment Standard.

In a diversity action such as this, federal law applies to procedural issues and Oregon law applies to the substantive issues. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions indicate that there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. FRCP 56. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed. 2d 265, 106 S.Ct. 2548 (1986). The party that brings a motion for summary judgment bears the burden of establishing the absence of an issue of material fact. Once the moving party has made the requisite showing, the non-moving party then bears the burden of establishing that there is a question of fact pertinent to an essential element of his case. *Celotex,* 477 U.S. at 322.

Summary judgment should be granted if the non-moving "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra.* "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex, supra*, at 322-23.

Here, the plain and unambiguous terms, conditions, and exclusions of the Artisan Policy preclude any potential or actual coverage for the claims at issue in the Underlying Suit. As such, summary judgment is appropriate.

### 2.      Policy Construction and Interpretation

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 12

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

The interpretation of insurance policy language is a question of law. *Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703, 706 (1992). A reviewing court examines the policy terms and is limited to the "four corners of the policy without regard to extrinsic evidence." Confined to the four corners of the policy without regard to extrinsic evidence. *Tualatin Valley Hous. Partners v. Truck Ins. Exch.*, 208 Or App 155, 160, 144 P3d 991, 993 (2006).

The reviewing court examines the policy, applying any definitions that are supplied by the policy itself and otherwise presuming that words have their plain, ordinary meanings. *Tualatin Valley Hous. Partners v. Truck Ins. Exch.*, 208 Or App 155, 159, 144 P3d 991, 993 (2006) (citing *Hoffman Constr. Co. v. Fred S. James & Co.,* 313 Or 464, 469-70, 836 P2d 703, 706 (1992)). If there is only one plausible interpretation of a disputed term, the reviewing court's analysis goes no further. *Tualatin Valley Hous. Partners v. Truck Ins. Exch.,* 208 Or App 155, 160, 144 P3d 991, 993 (2006). If there is more than one plausible interpretation of a disputed term, the reviewing court is directed to employ a series of analytical steps, any one of which may resolve the ambiguity. *Hoffman Constr. Co. v. Fred S. James & Co.,* 313 Or 464, 470, 836 P2d 703, 706 (1992).

Courts may not strain to find an ambiguity in an insurance contract where none exist. *Mortg. Bancorporation v. N.H. Ins. Co.*, 67 Or App 261, 264, 677 P2d 726, 728 (1984). Courts cannot create ambiguity or doubt where language of an insurance policy is not susceptible of more than one reasonable interpretation. *Id.*

### 3. Duty to Defend

Under Oregon law, an insurer's duty to defend is determined exclusively by reference to the insurance policy and the pleadings in the underlying complaint. *Bresee Homes, Inc. v. Farmers Ins. Exch.*, 353 Ore. 112, 116, 293 P.3d 1036, 1039 (2012). An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy.'" *Id.* (quoting *Ledford,* 319 Ore. at 399-400, 293 P.3d at 1039). The duty to defend arises if the "'complaint provides *any basis* for which the insurer provides coverage'" even if some of the conduct alleged in the pleadings falls

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 13

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

outside of the policy's coverage. *Id*. (emphasis in original). "'Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured.'" *Id*. "The insurer's knowledge of facts not alleged in the complaint is irrelevant in determining the existence of the duty to defend." *Ferguson v. Birmingham Fire Ins. Co.*, 254 Or. 496, 505, 460 P.2d 342, 346 (1969). The duty to defend against one allegation in a complaint imposes a duty to defend the insured against all of the allegations in the complaint. *Timberline Equip. v. St. Paul Fire and Marine Ins. Co*., 281 Or 639, 645 (1978). Conversely, "an insurer is not required to defend claims which, if proved, would provide no basis for recovery under the policy." *Sch. Dist. No. 1, Multnomah County v. Mission Ins. Co.*, 58 Or. App. 692, 697, 650 P.2d 929 (1982).

**C.  There is No Coverage Available under the Commercial Auto Coverage Part**

**1.      The Auto Policy's Insuring Agreement Was Not Triggered**

Under Oregon law, provision there must be sufficient causal connection between the injury and the ownership, maintenance, or use of the vehicle for coverage to apply under an "ownership, maintenance, or use" provision. *Oakridge Community Ambulance Serv., Inc. v. United States Fid. & Guar. Co.,* 278 Ore. 21, 25, 564 P.2d 164, 166-167 (1977). "The words 'arising out of' when used in such a provision are of broader significance than the words 'caused by,' and are ordinarily understood to mean originating from, incident to, or having connection with the use of a vehicle." *Id.* (quoting 7 Appleman, Insurance Law and Practice 144 § 4317). The *Oakridge* court explained the analysis in determining whether sufficient causal connection exists for coverage in the context of an ambulance company as follows :

> On one end of the continuum is the situation in which insured's ambulance while being negligently driven hits and injures a party. On the other end is the situation in which a potential customer, upon entering insured's place of business to order an ambulance to take his sick mother to the hospital, trips over a negligently arranged rug and breaks his leg. Coverage would exist as a matter of law in the

> first situation. In the latter situation, coverage as a matter of law does not exist, despite the causal connection between the broken leg and the 'ownership, maintenance or use' of the ambulance. Granted, had it not been for insured's ownership, maintenance and use of the ambulance, the customer would not have been in insured's office to order an ambulance for his mother and would not have broken his leg; nonetheless the causal connection would be too attenuated to afford coverage.

*Id.* at 25-26.

Put another way, coverage under the subject language more aptly applies to the ordinary risks of operating an automobile as opposed to risks inherent in the operation of an insured's business. *See First Far West Transp., Inc. v. Carolina Cas. Ins. Co.,* 47 Or App 339, 346, 614 P.2d 1187, 1191 (1980). Injuries caused by some act wholly disassociated from and independent of a vehicle's use are not covered by this language. *Jordan by Jordan v. Lee,* 76 Or App 472, 475, 709 P.2d 752, 753 (1985).

Pursuant to the Insuring Agreement above, coverage is available for damages that "insured" becomes legally responsible to pay because of "bodily injury" or "property damage" caused by an "accident" arising out of the ownership, maintenance, and use of an "insured auto." Ex. 2, at pg. 52-53. "Property damage" is defined to mean "physical damage to, destruction of, or loss of use of tangible property." Ex. 2 at 53.

As an initial matter, Oregon law is clear - conversion does not constitute "property damage." *B & L Furniture Co. v. Transamerica Ins. Co.*, 257 Ore. 548, 550, 480 P.2d 711, 712 (1971). Thus, alleged damages due to conversion and/or arising out of conversion (unjust enrichment) do not fall under this definition and do not trigger the Insuring Agreement.

Additionally, the alleged property damages did not arise out of the "ownership, maintenance, and use" of any auto. This is made clear because the Amended Complaint alleges that damage to the arena was caused in specified, particular ways. Ex. 1 at 6:19-21. Specifically, it is alleged that the area was damaged by Finishline's improper removal of the arena trusses without the use of a crane, storing trusses and other parts of the arena on a slope without proper

support, storing the trusses on their side on a slope, failing to store parts indoors or out of the elements, failing to store parts on a level pad to prevent warping, failing to store parts together or in a secure location, and failing to exercise reasonable care to ensure parts were not damaged.  Ex. 1 at 6:19-7:13.

None of these specifically alleged causes of damage are or were causally connected to the use of Finishline's truck.  The closest allegation is that Finishline caused damage while "[r]emoving the steel trusses and other parts of the horse arena from the flatbed trailer without the proper crane and spreader bar[.]"  Ex. 1 at 6:22-23.  However, nothing about such an act involved the actual ownership, maintenance, or use of the truck.  Instead, it was the alleged negligent failure to use the proper external equipment while unloading that is alleged to have caused the damage. The remaining allegations are that Finishline caused or allowed damage to be caused by its improper handling and storage of the arena.

In other words, it is alleged that damage was caused by acts disassociated with any vehicle and did not involve ordinary risks of operating or owning a vehicle.  The damage resulted from risks inherent in the operation of Finishline's business.  Accordingly, the Insuring Agreement for the Commercial Auto Coverage part was not triggered and there is no coverage.

Even if the Insuring Agreement were potentially triggered, clear and unambiguous exclusions preclude coverage.

**2.  Property Damage to the Arena is Otherwise Excluded**

The Commercial Auto Coverage Part precludes coverage for "property damage" involving property being transported or in the care custody or control of Finishline. Ex. 2 at 10.  Under this exclusion, coverage does not apply to "property damage" involving any property being transported or in the care, custody, or control of the "insured." This exclusion has been recognized as being valid and enforceable under Oregon law. *Schnitzer Inv. Corp. v. Certain Underwriters at Lloyd's of London*, 197 Ore. App. 147, 104 P.3d 1162, 2005 Ore. App. LEXIS 61

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 16

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

There can be no dispute that the Amended Complaint alleges that damage to the arena occurred while the arena was in the care custody or control of Finishline.  Moreover, even if the Amended Complaint could be read to include an allegation that damage occurred during transport, the above-referenced exclusion precludes coverage.  In addition, and as set forth above, the Commercial Auto Coverage Part excludes coverage for expected or intended property damage or for property damage intentionally caused by an insured.  Ex. 2 at 9.  The allegation that Finishline stored the trusses and other parts of the arena on a slope without proper supporting of the parts over the objection of Bennet clearly falls within the scope of this exclusion.  Simply put, there is no possibility of coverage under the Commercial Automobile Coverage Part.

### D.     There is No Coverage Under the Motor Truck Cargo Endorsement

Under the Motor Truck Cargo Legal Liability Coverage ("Motor Truck Cargo") endorsement, Artisan will pay for the direct physical "loss" to "covered property" that the named insured is legally liable to pay as a "trucker" under a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage.  Under the endorsement, the "covered property" must be in the named insured's exclusive physical custody and control while in the due course of transit in or attached to an insured auto or during loading and unloading.  Furthermore, coverage applies only to loss to "covered property" if the "loss" is caused by a "covered peril." "Covered peril" is defined as any risk or direct physical "loss" to "covered property" with the express exclusion for loss as a result of consequential loss or non-delivery. "Covered property" is defined as lawful goods and merchandise of others but property that is not under a bill of lading is expressly excluded as "covered property."

According to the Amended Complaint, the contract to pick up and deliver the arena was an oral agreement between Bennett and Finishline and payment was to occur upon delivery. Ex. 1 at 2-3. Delivery did not occur, so no payment was made or has been made. Ex. 1 at 4. Significantly, the Underlying Suit does not mention a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage.

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 17

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

A bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage must be written documents/agreements, thus they cannot be issued orally. Black Law Dictionary defines bill of lading as "a ***document*** acknowledging the receipt of arena by a carrier or by the shipper's agent and the contract for the transportation of the arena; a ***document*** that indicated the receipt of the arena for shipment and that is issued by a person engaged in the business of transporting or forwarding the arena." *Bill of Lading,* BLACKS LAW DICTIONARY (10th ed. 2014) (emphasis added). Furthermore, when used in cases discussing the same, Oregon courts list bill of lading along with other documents such as warehouse receipts. *See Pokorny v. Williams,* 199 Ore. 17, 37-38, 260 P.2d 490, 500 (1953). Oregon statutes also follow the same structure. ORS 77.3020 ("…bill of lading or other document of title..").

Moreover, the Supreme Court of Oregon has held that a bill of lading that was created after a delivery was not incorporate into the oral contract for the delivery. *Voty v. Bekins Moving & Storage Co.,* 169 Ore. 30, 33, 129 P. 2d 360, 363, (1942) ("The mere issuance of a bill of lading... will not, itself, establish a contract. There must be a meeting of the minds of the contracting parties."). Thus, even a written document created after an oral agreement does not establish a contract and is not incorporated into a prior oral contract.

Here, the Amended Complaint expressly states that the agreement was oral in nature. Ex. 1. at 1. As such, the Insuring Agreement for the Motor Truck Cargo Endorsement is not and has not been triggered. Even if it was, the Motor Truck Cargo Endorsement precludes coverage for losses to covered property caused by, resulting in or from, or arising out of consequential loss and/or caused by, resulting in or from, or arising out of nondelivery or misdelivery.

Consequential loss is the loss of use or loss of market value or delay. Here, according to the Amended Complaint, the arena is still in Finishline's possession and has not been delivered to Burley, Washington as orally agreed upon. Ex. 1 at 5. Thus, coverage is excluded for the nondelivery. Furthermore, according to the Amended Complaint, Bennett "missed the opportunity to reconstruct the arena at the delivery site" and has "spent tens of thousands of dollars in

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

preparation for construction of the horse arena." Ex. 1 at 5.  The loss of the use of the arena, any delay, and any loss of market value are excluded from coverage under the Motor Truck Cargo Endorsement.

###    E.        The CGL Endorsement Does Not Provide Coverage

Under the Insuring Agreement in the CGL Coverage Part, Artisan will pay for sums, other than punitive or exemplary damages, that an "insured" becomes legally obligated to pay as a result of "bodily injury" or "property damage."  Ex. 2 at 109-110.  "Property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured." Ex. 2 at 108.

As previously noted, conversion is not "property damage" under Oregon law.  *B&L Furniture*, 257 Ore. at 550.  It is also considered an intentional act.  *Id*. at 549-550.  Thus, the claims for conversion/unjust enrichment are not covered under the CGL Coverage Part. Furthermore, under Oregon law, consequential or intangible damages are not considered property damage.  *Wyoming Sawmills, Inc. v. Transportation Ins. Co.*, 282 Ore. 401, 406, 578 P.2d 1253, 1256 (1978).

Wyoming Sawmills, Inc ("Wyoming") - a lumber manufacturer, was insured under a comprehensive general liability insurance policy provided by Transportation Insurance Company ("Transportation"). *Id.* at 403. Wyoming sold studs to North Pacific who used those studs in the construction of buildings. *Id*. Wyoming was sued by North Pacific who claimed the studs were defective and would have to be replaced. *Id*. Wyoming tendered the lawsuit to Transportation advising that if tender was not accepted, Wyoming would settle the lawsuit with North Pacific and seek reimbursement. *Id*. Transportation denied the claim. *Id*. Wyoming eventually settled its claims with North Pacific in exchange for two releases. *Id*. One of the settlement instruments covered the labor expenses involved in replacing the defective studs. *Id*. After settling, Wyoming instituted a lawsuit against Transportation Insurance Company. *Id*.

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

In the lawsuit between Wyoming and Transportation, Transportation denied the existence of "property damage" as covered by the policy for the labor expenses involved in replacing the studs. *Id*. Analyzing the definition of "property damage" the policy the Supreme Court of Oregon stated:

> The present policy defines property damage as "physical injury" to … tangible property." (Emphasis added.) . . . The inclusion of this word [physical] negates any possibility that the policy intended to include "consequential or intangible damage," such as depreciation in value within the term "property damage." The intention to exclude such coverage can be the only reason for the addition of the word.

*Id*. at 406.

In the instant matter, the definition of property damage in the above endorsement is substantially similar to the definition of property damage in *Wyoming*.  As such, there is no coverage for any claim for depreciation or loss of value or other intangible damages alleged. Further, the CGL Coverage Part specifically excludes coverage for breach of contract/contractual liability for "property damage" unless Finishline would have liability in the absence of the contract. Ex. 2 at 111.

Finally, the arena was entrusted to Finishline by Bennett and all alleged property damage occurred while the arena was in Finishline's care, custody, or control.  As such, the CGL Coverage Part's exclusion for personal property in the care, custody, or control of Finishline precludes coverage.  *See* Ex. 2 at 113. *See, e.g., Ferguson v. Birmingham Fire Ins. Co.*, 254 Ore. 496, 503-505 (noting that a care, custody, and control exclusion applies to property over which an insured assumes control knowing that it belongs to another person).

## V.    CONCLUSION

Based on the foregoing, Artisan asks that the Court enter a Motion for Default or in the alternative, grant this Motion for Summary Judgment.

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

DATED this 7th day of July, 2021.

**LETHER LAW GROUP**

*/s/ Thomas Lether*
Thomas Lether, OSB #101708
*/s/ Eric J. Neal*
Eric J. Neal, OSB # 110268
1848 Westlake Avenue N, Suite 100
Seattle, WA 98109
P: (206) 467-5444/F: (206) 467-5544
eneal@letherlaw.com
tlether@letherlaw.com
*Attorneys for Plaintiff Artisan and Truckers Casualty Company*

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 21

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 6,639 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 22

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under the penalty of perjury under the laws of the State of Washington that on this date I caused to be served in the manner noted a true and correct copy ofthe foregoing on the following party(ies):

Michael FitzSimons
205 3rd Street
Hood River, OR 97031
mike@hoodriverlaw.com

**By:**        **[ ] First Class Mail**        **[X] E-Service/Email      [ ] Legal Messenger**

Finishline Trucking, LLC
PO Box 453
Hood River, OR 97031

**By:**        **[X] First Class Mail**        **[ ] E-Service/Email   [ ] Legal Messenger**

DATED this 7th day of July, 2021 at Seattle, Washington.

*/s/ Jessica Bowman*
Jessica Bowman | Paralegal

MOTION FOR DEFAULT JUDGMENT
OR IN THE ALTERNATIVE SUMMARY JUDGMENT- 23

LETHER LAW GROUP.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544