IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ARTISAN AND TRUCKER CASUALTY COMPANY**, *a foreign insurer*<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**FINISHLINE TRUCKING, LLC** and **PHILLIP BENNETT**,<br><br>　　　　Defendants. | Case No. 3:20-cv-01762-IM<br><br>**OPINION AND ORDER** |

Eric Jay Neal and Thomas Lether, Lether Law Group, 1848 Westlake Avenue North, Suite 100, Seattle, WA 98109. Attorneys for Plaintiff.

Michael B. FitzSimons, Jacques Sharp Sherrerd & FitzSimons, 205 Third Street, Hood River, OR 97031. Attorney for Defendant Phillip Bennett.

**IMMERGUT, District Judge.**

　　Plaintiff Artisan and Truckers Casualty Company brings this declaratory coverage action against Defendants Finishline Trucking, LLC ("Finishline") and Phillip Bennett ("Bennett"). Plaintiff seeks a determination that it has no duty to defend or indemnify Finishline under a

PAGE 1 – OPINION AND ORDER

commercial automobile policy it issued as to claims brought against Finishline by Bennett. *See* ECF 1 at 1. Finishline has not appeared in this case, and the Clerk entered a default against Finishline on February 17, 2021. ECF 19. Plaintiff now moves for entry of default judgment against Defendants.[1] ECF 28. For the following reasons, this Court GRANTS Plaintiff's motion for default judgment.

## STANDARDS

Under Rule 55(a), the clerk of court is required to enter an order of default if a party against whom affirmative relief is sought has failed timely to plead or otherwise defend an action. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Upon the entry of default, the court accepts "the well-pleaded factual allegations" of the complaint "as true." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quotation marks omitted); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "The court, however, does not accept as admitted facts that are not well-pleaded, conclusions of law, or facts relating to the amount of damages." *Fathers & Daughters Nev., LLC v. Brown*, No. 3:16-cv-927-SI, 2017 WL 2378358, at *1 (D. Or. June 1, 2017); *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (quoting *TeleVideo Sys., Inc. v.*

---

[1] By stipulation, Plaintiff and Bennett have informed this Court they agree that no coverage is available to Finishline. ECF 36.

PAGE 2 – OPINION AND ORDER

*Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)). If the plaintiffs claim is not for a certain sum or a sum that can be made certain by computation, the court may conduct hearings to effectuate a judgment as needed to conduct an accounting, ascertain damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2)(A)–(D).

"Rule 55 provides that 'after the clerk's entry of default against a defendant, a court may enter default judgment against that defendant.'" *Glacier Films (USA), Inc. v. Tenorio*, No. 3:15-cv-01729-SB, 2016 WL 3766465, at *1 (D. Or. June 22, 2016) (quoting *FirstBank P.R. v. Jaymo Properties, LLC*, 379 F. App'x. 166, 170 (3rd Cir. 2010)). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising this discretion, courts in this circuit consider the factors set forth in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986). *Glacier Films*, 2016 WL 3766465, at *1. The *Eitel* factors are: (1) the possibility of prejudice to plaintiffs; (2) the merits of plaintiffs' substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the litigation; (5) the possibility of dispute over material facts; (6) whether the default was because of excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72. The "starting point" of the court's analysis "is the general rule that default judgments are ordinarily disfavored." *Id*. at 1472.

## BACKGROUND

Artisan is a foreign insurance company organized under the laws of the State of Ohio with its principal place of business in the State of Ohio. ECF 1 at ¶ 2. Finishline is an Oregon

limited liability company with its principal place of business in Oregon. *Id*. at ¶ 3. Bennett is a citizen of Washington. *Id*. at ¶ 4.

Artisan issued Commercial Auto Insurance Policy No. 00364363-0 ("Policy") to Finishline with a policy period of January 28, 2019 to January 28, 2020. *Id*. at ¶ 19. Finishline is the named insured on the Policy. *Id*. at ¶ 20.

On or about June 24, 2019, Bennett orally contracted with Finishline for the delivery of a disassembled indoor horse-riding arena from Bend, Oregon to Burley, Washington at an agreed-upon rate for the length and time of the delivery trip. *Id*. at ¶ 7. The parties agreed to a total price of $4,665.00 payable on delivery in Burley. ECF 29-1 at ¶ 4. Finishline picked up the arena in Bend on July 11, 2019 and delivered it to Finishline's business location in Hood River. ECF 1 at ¶ 8. Bennet expected delivery on or before July 18, 2019. *Id*. Finishline failed to deliver the arena on or before July 18, 2019; instead, Finishline emailed an electronic invoice to Bennet on July 27, 2019 demanding payment prior to delivery and began charging a daily storage fee. *Id*. at ¶ 9–11. The invoice totaled $15,900.00. ECF 29-1 at ¶ 10.

On November 1, 2019, Bennett sued in Hood River County Circuit Court against Finishline for breach of contract, conversion/unjust enrichment, and negligence. *See* Complaint, *Phillip Bennett v. Finishline Trucking, LLC*, No. 19CV47870 (Hood River Cnty. Cir. Ct. Nov. 1, 2019).[2] Bennett alleges that Finishline remains in wrongful possession of the arena; that the

---

[2] Artisan's complaint states that the lawsuit was brought on April 21, 2020 *by* Finishline. ECF 1 at ¶ 12. But the docket in that case, of which this Court takes judicial notice, clearly states that Bennet brought the lawsuit on November 1, 2019; April 21, 2020 is the date on which Bennet filed an amended complaint in the case. *See* Amended Complaint, *Phillip Bennett v. Finishline*

PAGE 4 – OPINION AND ORDER

arena is valued at $750,000; that Finishline's wrongful possession has caused Bennett to incur actual costs and expenses in loss of property and construction delays; and that Finishline has stored the arena in a way that damaged it beyond repair.[3] ECF 1 at ¶¶ 13–16. Finishline, in turn, has tendered a claim to Artisan seeking defense and indemnity coverage. *Id*. at ¶ 17. Artisan is defending Finishline in the underlying suit subject to an express reservation of rights. *Id*. at ¶ 18.

On October 13, 2020, Artisan filed its Complaint, ECF 1, seeking a declaratory judgment that it owes no duty to defend or indemnify Finishline in the underlying lawsuit because the Policy does not apply to the conduct alleged. Pursuant to this Court's order, ECF 10, Artisan's Complaint and summons were served on Finishline by mail on January 12 and 20, 2021. ECF 12 at 2–3. Cole Griffiths, who is listed as Finishline's registered agent with the Oregon Secretary of State, acknowledged receipt by phone on January 21, 2021. *Id*. at 3.

/

/

/

---

*Trucking, LLC*, No. 19CV47870 (Hood River Cnty. Cir. Ct. Apr. 21, 2020). *See also Cidone v. Pinnacle Prop. Mgmt. Servs.*, No. 3:20-cv-01133-AC, 2021 WL 2792322, at *2 (D. Or. May 21, 2021) (citing *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006)) ("Publicly available filings . . . from state court proceedings are properly the subject of judicial notice under FRE 201."). These dates are also reflected in Artisan's instant motion. *See* ECF 28 at 3.

[3] Bennet's Amended Complaint in the underlying lawsuit alleges that Finishline damaged the truck by removing the steel trusses and other parts of the arena from a flatbed trailer without a proper crane and spreader bar; storing the trusses on their side on a slope; failing to store parts indoors or otherwise protect them from the elements; failing to store the parts on a level concrete pad to prevent warping or bending; and failing to store the parts in a single or secure location; and failing to exercise reasonable care to ensure that parts were not damaged. ECF 29-1 at ¶ 24.

PAGE 5 – OPINION AND ORDER

## DISCUSSION

I. **Appropriateness of Entry of Default Judgment under *Eitel***

    A.    **First *Eitel* Factor**

The first *Eitel* factor considers whether Plaintiff would suffer prejudice if default judgment is not entered. *PepsiCo, Inc., v. Cal. Sec. Cans,* 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *Philadelphia Indem. Ins. Co. v. United Revolver Club of Sacramento, Inc.,* No. 2:18-cv-2960 KJM DB, 2020 WL 773419, at *2 (E.D. Cal. Feb. 18, 2020). Bennett has sued Finishline, and Plaintiff is asked to defend or indemnify Finishline in that action. Because Finishline has not defended this action, if default judgment is not entered, Plaintiff will be denied the right to judicial resolution of the claims. Thus, this Court finds this potential prejudice favors granting a default judgment. *See Aspen Ins. UK Ltd. v. Killarney Constr. Co.,* No. C 11-1294 RS, 2012 WL 1831498, at *2 (N.D. Cal. May 18, 2012) (finding insurer would be prejudiced if default judgment was not entered).

    B.    **Second and Third *Eitel* Factors**

This Court considers the merits of Artisan's substantive claims and the sufficiency of the complaint together because of the relatedness of the two inquiries. As part of this inquiry, this Court must consider whether the allegations in the complaint state a claim that supports the relief sought. *PepsiCo*, 238 F. Supp. 2d at 1175; *Philadelphia Indem.*, 2020 WL 773419, at *4.

The Federal Declaratory Judgment Act permits "any court of the United States . . . [to] declare the rights and other legal relations of any interested party seeking such declaration" "[i]n

PAGE 6 – OPINION AND ORDER

a case or actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). And "[a]ny such declaration shall have the force and effect of a final judgment or decree[.]" *Id*.

Under Oregon law, "the interpretation of an insurance policy is a question of law," and a court's "task is to ascertain the parties' intentions." *Coelsch v. State Farm Fire and Cas. Co.*, 298 Or. App. 207, 211 (2019) (citing *Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or.*, 313 Or. 464, 469 (1992). The court does so by examining the terms of the insurance policy as interpreted from "the understanding of the ordinary purchaser of insurance." *Totten v. New York Life Ins. Co.*, 298 Or. 765, 771 (1985). If a word or phrase is explicitly defined in the policy, the court applies that definition. *Coelsch*, 298 Or. App. at 211; *Gonzales v. Farmers Ins. Co. of Or.*, 345 Or. 382, 387 (2008). If the policy does not define a particular term, the court will consider if the term has a plain meaning and is susceptible to only one plausible interpretation. *Coelsch*, 298 Or. App. at 211. If the term has a plain meaning, the court's analysis ends. *Id.* If the term is capable of more than one plausible interpretation, the court examines the term in "the particular context in which that term is used in the policy and the broader context of the policy as a whole." *Hoffman*, 313 Or. at 470. Only if ambiguity remains, the court then will interpret the term's meaning against the insurance company. *Id.*; *Coelsch*, 298 Or. App. at 212.

Artisan argues that it is entitled to a declaration that it owes no duty to defend or indemnify Finishline in the underlying lawsuit because no part of the Policy covers the types of conduct or damages alleged by Bennett. ECF 28 at 15–21; *see also Allstate Ins. Co. v. Morgan*, 123 F. Supp. 3d 1266, 1273 (D. Or. 2015) (stating that "if the insurer can establish that the

PAGE 7 – OPINION AND ORDER

insured is precluded from coverage, it has neither the duty to defend nor the duty to indemnify the insured.").

Here, the allegations support Artisan's request for a declaration that it owes no duty to defend or indemnify in the underlying lawsuit. First, Artisan argues that the Policy's Insuring Agreement was not triggered. ECF 28 at 15. Part I of the Insuring Agreement states that Artisan will pay for "bodily injury [or] property damages . . . for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of an insured auto." ECF 29-2 at 57–58. But under Oregon law, conversion is an intentional act and does not constitute property damage. *See B&L Furniture Co. v. Transamerica Ins. Co.*, 257 Or. 548, 550 (1971). And while Bennett's claim for negligence stems from the removal of the trusses and other parts from an insured automobile—the flatbed—the specific allegation does not relate to the use of the automobile but to Finishline's alleged failure to use proper external tools—a crane and spreader bar. Under Oregon law, coverage under an commercial auto policy applies to the "ordinary risks of operating an *automobile*" rather than "risks inherent in the operation of [the insured's] *business*." *First Far W. Transp., Inc. v. Carolina Cas. Ins. Co.*, 47 Or. App. 339, 346 (1980) (emphasis added).

Second, Artisan argues that coverage for property damage to the arena is otherwise precluded by an explicit "care, custody, or control" exclusion. ECF 28 at 17. The Policy lists an exclusion for "[p]roperty damage to . . . any property . . . being transported by . . . or in the care, custody or control of the insured." ECF 29-2 at 15. Such exclusions have been recognized as valid and enforceable under Oregon law. *See, e.g.*, *Schnitzer Inv. Corp. v. Certain Underwriters*

PAGE 8 – OPINION AND ORDER

*at Lloyd's of London*, 197 Or. App. 147, 161–63 (2005) (discussing a care, custody, or control exclusion). Bennett's conversion and negligence allegations stem from Finishline's actions while the arena was in their care, custody, and control. And even if any of Bennett's allegations stem from the transportation of the arena from Bend to Hood River County, the exclusion applies to property damage to property in transit.

Third, Artisan argues that the Motor Truck Cargo Legal Liability Coverage endorsement does not apply on these facts. ECF 28 at 18. The Policy states that Artisan "will pay for the direct physical loss to covered property that you are legally liable to pay as a trucker under a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage." ECF 29-2 at 82. Even so, the Policy notes that "[a]ny property for which no bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage has been issued" is *not* covered property. *Id*. at 88. Bennett and Finishline entered into an oral contract for delivery and none of the documentation listed in the policy was issued. Thus, the arena was not covered property for which damage was covered under the Motor Truck Cargo Legal Liability Coverage endorsement. And even if the arena were covered property, the endorsement applies only if the loss was caused by a covered peril. *Id*. at 82. The Policy excludes from covered peril "loss of use . . . loss of market value, or delay" (i.e., consequential loss) as well as "[n]ondelivery or misdelivery." *Id*. at 85–86. The loss caused by the nondelivery include Bennett's "missed . . . opportunity to reconstruct the arena at the delivery site" and "tens of thousand of dollars in preparation for construction of a horse arena." ECF 29-1 at ¶ 11.

PAGE 9 – OPINION AND ORDER

Finally, Artisan argues that the Policy's Commercial General Liability ("CGL") Endorsement does not provide coverage. ECF 28 at 20. The CGL Endorsement adds to the Commercial Auto Policy coverage for "sums . . . that the insured becomes legally obligated to pay as damages because of . . . property damage." ECF 29-2 at 110–11. The CGL Endorsement defines property damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property." *Id.* at 109. As noted above, under Oregon law, conversion is not property damage. *B&L Furniture*, 257 Or. at 550. Thus, the CGL endorsement does not cover the alleged conversion. Moreover, the CGL cannot apply to consequential or intangible damages because it defines property damage as physical injury. *See Wyo. Sawmills, Inc. v. Transportation Ins. Co.*, 282 Or. 401, 406 (1978) ("The inclusion of this word [physical] negates any possibility that the policy was intended to include 'consequential or intangible damage,' such as depreciation in value, within the term 'property damage.'"). Thus, the CGL Endorsement does not provide coverage as to the losses claimed by Bennett for nonuse of the arena. Lastly, the CGL Endorsement contains its own exclusion for "personal property in the care, custody or control of the insured." ECF 29-2 at 114. For the same reasons articulated above, the "care, custody, or control" exclusion precludes coverage for the exact types of damages allegedly caused by Finishline.

In short, the merits of Artisan's claim for declaratory relief and sufficiency of its pleadings and record presented here favor entry of default judgment under the second and third *Eitel* factors.

    **C.**    **Fourth *Eitel* Factor**

PAGE 10 – OPINION AND ORDER

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct," *PepsiCo.*, 238 F. Supp. 2d at 1176 . In this action, Artisan does not seek any monetary damages. Instead, it seeks a declaratory judgment that it owes no duty to defend or indemnify Finishline in the underlying lawsuit. As a result, the fourth *Eitel* factor favors granting default judgment. *See id*. at 1177 (finding the fourth *Eitel* factor favors granting default judgment when monetary damages were not sought).

D.      **Fifth *Eitel* Factor**

Under the fifth factor, this Court considers the possibility of dispute over material facts. Here, this Court may assume the truth of all well-pleaded facts in the complaint and must apply the definitions provided in the insurance contract. Thus, absence of disputed material facts here favors entering default judgment. *See Atain Specialty Ins. Co. v. Szetela*, No. 2:14-cv-2991-KJM-KJN, 2016 WL 3354344, at *5 (E.D. Cal. June 16, 2016) (noting absence of genuine disputes of material fact in insurance policy exclusion supported entry of declaratory judgment).

E.      **Sixth *Eitel* Factor**

"The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect." *PepsiCo.*, 238 F. Supp. 2d at 1177. Finishline was properly served with the complaint and its registered agent acknowledged receipt. ECF 12. Thus, Finishline has had ample notice of Artisan's suit for declaratory relief yet filed no response. There is no indication that Finishline's default resulted from excusable neglect.

F.      **Seventh *Eitel* Factor**

PAGE 11 – OPINION AND ORDER

While cases should be determined on their merits where possible, courts recognize that this factor alone is not enough to prevent entry of a declaratory judgment. *See Atain Specialty Ins.*, 2016 WL 3354344, at *6. Finishline has not appeared despite acknowledging receipt of the Complaint and summons. Thus, this Court finds that the policy of resolving cases on their merits should not prevent entry of default judgment under these facts.

In summary, after considering each of the *Eitel* factors, this Court finds that they warrant entry of default judgment against Defendants.

## CONCLUSION

For the reasons stated above, Artisan's Motion for Default Judgment, ECF 28, is GRANTED.

**IT IS SO ORDERED**.

DATED this 11th day of February, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge